IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-92-357-CR




JESUS HERIBERTO BORJAS,


a/k/a EDDIE BORJAS,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 



FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL

DISTRICT


NO. 92-119-K277, HONORABLE JOHN R. CARTER, JUDGE PRESIDING


 





PER CURIAM

 On December 6, 1989, appellant robbed a Georgetown convenience store clerk at
gunpoint. After hearing this evidence, a jury found appellant guilty of aggravated robbery and
assessed punishment at imprisonment for ninety-nine years. Tex. Penal Code Ann. § 29.03 (West
Supp. 1993). 

 In his first point of error, appellant contends that the indictment should have been
dismissed for noncompliance with the Interstate Agreement on Detainers (IAD). Tex. Code Crim.
Proc. Ann. art. 51.14 (West 1979). Under article III(a) of the IAD, a prisoner against whom a
detainer has been lodged based on an untried indictment "shall be brought to trial within 180 days
after he shall have caused to be delivered to the prosecuting officer and the appropriate court of
the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his
request for a final disposition to be made of the indictment." The record in this cause reflects that
appellant left Texas after the robbery and went to California, where he was later convicted for
murder. A detainer based on the untried aggravated robbery indictment was lodged against
appellant by Williamson County while he was imprisoned in California. On December 6, 1991,
appellant gave his written request for final disposition of the Williamson County indictment to the
prison warden for processing and mailing. See IAD art. III(b). This notice was received in the
Williamson County district attorney's office on December 26. Appellant's trial began on June 22,
1992, 199 days after appellant's request for final disposition was delivered to the warden in
California and 179 days after the request was received in Williamson County. 

 Appellant first raised the issue of noncompliance with the IAD in his motion for
new trial. At the hearing on this motion, the State introduced in evidence a partial transcription
of the court reporter's notes from the May 18, 1992, docket call in the district court. At that
time, counsel for appellant informed the court that he and the prosecutor had agreed to set this
cause for a pretrial hearing on June 1, followed by trial on June 22. We hold that because defense
counsel agreed to the June 22 trial date, appellant cannot now be heard to complain that this date
did not comply with the deadline established by the IAD. See Ex parte Hargett, 827 S.W.2d 606,
607 (Tex. App.--Austin 1992, pet. ref'd) (appellant cannot complain of invited error). Under the
circumstances, we need not decide whether appellant's failure to move for a dismissal of the
indictment prior to trial waived any claim he might have under the IAD. See Tex. R. App. P.
52(a). We also note that it has been held that the 180-day time limit prescribed by article III(a)
begins to run when the request for final disposition is received by the prosecutor and court in the
jurisdiction lodging the detainer. Fax v. Michigan, ___ U.S. ___, 122 L.Ed.2d 406 (1993); Schin
v. State, 744 S.W.2d 370, 374 (Tex. App.--Dallas 1988, pet. ref'd); see also McDonald v. State,
846 S.W.2d 954, 955 (Tex. App.--Fort Worth 1993, no pet.); Engle v. Coker, 820 S.W.2d 247,
252 (Tex. App.--Beaumont 1991, no pet.); Ravenscraft v. State, 753 S.W.2d 741, 742 (Tex.
App.--Austin 1988, no pet.). Under these authorities, appellant's trial began within the time limit
prescribed by the IAD. Point of error one is overruled.

 In point of error four, appellant complains of a statement made by the prosecutor
to the jury panel during voir dire. The incident occurred early in the voir dire process, as the
prosecutor was explaining this State's bifurcated trial procedure:



[A]fter the jury is picked, the evidence is presented to the ladies and gentlemen of
the jury for their decision on whether the Defendant is guilty or innocent. Now,
in Texas a Defendant has a right to choose who sets the punishment in the event
that he or she is found guilty. I believe the Defendant in this case in the event he
is convicted has asked that the jury set the punishment. That's the punishment
phase which is a little broader. Certain other evidence that might not be admissible
in the guilt/innocence phase --



At this point, defense counsel interrupted and a bench conference was held. Appellant objected
that the prosecutor's statement "implies that there is other evidence against this Defendant which
may be admitted at a part of this trial" and asked that the prosecutor not be allowed "to go into
the possibility of other evidence that may be admissible in guilt/innocence." (1) The objection was
overruled. The prosecutor then told the jury, without further objection by appellant, that he was
referring to the procedure "followed . . . in any case in Texas, not necessarily that I'm referring
to this case, but just generally speaking, . . . at the punishment phase certain other evidence can
be admitted if any exists."

 Appellant relies on the opinion in Stearn v. State, 487 S.W.2d 734 (Tex. Crim.
App. 1972). In that case, the prosecutor said during his opening statement at the guilt stage, "We
couldn't bring you all of the circumstances surrounding the arrest." The court concluded that the
defendant's objection to this remark was erroneously overruled, reasoning that the jury could
logically surmise from the remark that there was inadmissible evidence that, if revealed, would
show other acts committed by the defendant that would justify a finding of guilty. Id. at 736. 

 We believe that the cause before us is distinguishable from Stearn, and not only
because the statement complained of was made during voir dire. The prosecutor in that case told
the jury that there was other, inadmissible evidence concerning the arrest of the defendant. The
inference was inescapable that this evidence was incriminating. In the instant cause, on the other
hand, the prosecutor told the jury panel only that there might be a second stage of trial at which
additional evidence might be admitted. The prosecutor did not say or imply that there was
incriminating evidence that the jury would not be permitted to hear. No error is presented. The
fourth point of error is overruled.

 Appellant's fifth point of error urges that the district court erroneously admitted
evidence of an extraneous offense. Tex. R. Crim. Evid. 404(b). The alleged error arose after
the complaining witness testified that he had seen appellant in the store numerous times in the
months preceding the robbery. In an effort to impeach this testimony, appellant called Rick Penia,
the custodian of records at the Williamson County jail. Penia testified that appellant was
incarcerated in that facility between June 28, 1989, and November 6, 1989. During cross-examination, the prosecutor asked Penia the charge for which appellant had been booked and its
disposition. Over appellant's objection, Penia testified that appellant had been booked for
burglary of a motor vehicle and released on felony probation.

 Appellant contends that the direct testimony regarding his previous incarceration
had been introduced for the limited purpose of rebutting the victim's testimony, and that the
prosecutor's inquiry into the nature of the offense for which appellant was incarcerated and the
circumstances of his release was improper. We hold that this inquiry, if error, was rendered
harmless when other evidence proving the same facts was offered by appellant. Brown v. State,
757 S.W.2d 739, 741 (Tex. Crim. App. 1988). After Penia was excused, appellant offered in
evidence defense exhibits one, two, and three, the judgment of conviction and conditions of
probation, motion to revoke probation, and capias in Williamson County cause number 89-454-K,
the burglary of a vehicle to which Penia had referred. This documentary evidence was not offered
to meet, destroy, or explain Penia's testimony. See Bush v. State, 697 S.W.2d 397, 404 (Tex.
Crim. App. 1985). Point of error five is overruled. 

 Appellant's second and third points of error are related. In point three, appellant
contends the district court erred by permitting a California police officer called by the State as a
reputation witness at the punishment stage to identify himself as a homicide detective. (2) In point
two, appellant argues that the court erroneously overruled his objection to the prosecutor's
reference, during jury argument at the punishment stage, to appellant's "victims" in California.

 At the time of this trial, an appeal from appellant's California conviction for murder
was pending. That conviction was, therefore, not admissible at the punishment stage. Tex. Code
Crim. Proc. Ann. art. 37.07, § 3(a) (West Supp. 1993); Grunsfeld v. State, 843 S.W.2d 521
(Tex. Crim. App. 1992). Appellant argues that calling the California officer as a reputation
witness was merely a ploy by the State to get evidence of the inadmissible murder conviction
before the jury, and that this ploy succeeded when the district court ruled that the officer could
identify himself as a homicide investigator. Appellant further argues that this error was
compounded during argument at the punishment stage, when the prosecutor said:



Reputation, it's bad. You all know what reputation is. It's what people say about
you. It's not just what police think about you. It's what community. Don't you
think the police go out and investigate cases? Sure, they do. In doing that, are
they talking to other police? Sure. But who else are they talking to primarily? 
They are talking to citizens, and they're talking to victims. The two officers, one
from here in Georgetown and one from California.



At this point, appellant objected outside the jury's hearing that the prosecutor was asking the jury
to consider matters not in evidence, specifically crimes that appellant might have committed in
California. The objection was overruled. The prosecutor did not return to this subject.

 Appellant relies on two opinions by the Court of Criminal Appeals. The first is
Wright v. State, 609 S.W.2d 801 (Tex. Crim. App. 1980). In that Dallas prosecution, the State
called a San Antonio police officer to testify to the defendant's bad reputation for being peaceful
and law-abiding. After it was shown that the officer's testimony was based on his having
"stopped" the defendant on one occasion and on conversations the officer had with the
prosecutors, the court instructed the jury to disregard the officer's testimony. During argument,
however, the prosecutor reminded the jury of the San Antonio officer and said, "You had another
police officer come in and say he met him on July 14, 1978, and his reputation is bad. . . . [T]hat
same man told you that he knew him and he met him in San Antonio, not in Dallas, and there
were no questions beyond that so you can think about that for a minute. You can put all of these
things together." Id. at 803. The Court of Criminal Appeals referred to these remarks as
"blatantly improper." Id. at 804. 

 The second opinion cited by appellant is Jackson v. State, 529 S.W.2d 544 (Tex.
Crim. App. 1975). The defendant was on trial for the aggravated robbery of a store clerk. At
the punishment stage, the State called a witness who testified that she came to know the defendant
two nights after the charged offense and that his reputation for being law-abiding was "bad, very
bad." Id. at 545. During his subsequent argument, the prosecutor repeatedly referred to this
witness:



 Now, if somebody really had some remorse . . . you wouldn't have a
situation where a young lady sixteen years old comes to know that same man
December 22nd at night . . . . 


 . . . .


 She told you when she came to know him, she told you his reputation was
very bad, and we observed a person, and you observed her demeanor . . . . 


 . . . .


 You observed his demeanor when she testified before you. Did you see any
remorse or sorrow after he saw that girl again . . . ? 


 . . . .


How would you like to be one of the victims that testified against him --



Id. at 545-46. The court held that the prosecutor's argument was a request for the jury to assess
punishment for an unadjudicated offense that was not and could not have been admitted at trial. 
Although the last remark quoted above drew an objection that was sustained and the jury was
instructed to disregard, the court found that the instruction was not adequate to overcome the
prejudice caused by the prosecutor's argument. Id. at 546.

 This cause is distinguishable from Wright and Jackson. First, appellant does not
contend that the California officer was not a competent reputation witness. To the contrary,
appellant expressly stated at trial that he did not object to the officer testifying to appellant's
reputation. (3) Second, the prosecutors in each of the cited cases engaged in an overall "course of
conduct . . . which continually brought matters before the jury which were impermissible and that
could only have been calculated to inflame and prejudice the minds of the jury." Wright, 609
S.W.2d at 806. (4) No such course of misconduct by the prosecutor is shown in this cause. Finally,
the arguments of the prosecutors in Wright and Jackson unambiguously invited the jury to
speculate about other criminal activities by the defendants and to assess punishment accordingly. 
In this cause, we have the single reference by the prosecutor to "victims."

 It is common practice for police officers to testify as reputation witnesses. It is
common knowledge that police officers investigate crimes and talk to victims of those crimes. 
We hold that the prosecutor in this cause has not been shown to have engaged in a course of
conduct designed to inform the jury of appellant's inadmissible California murder conviction. 
Points of error two and three are overruled.

 Appellant's last point of error challenges the validity of the district court's order
cumulating the sentence in this cause with that assessed in the California murder case. Trial
courts have the discretion to determine whether a sentence is to be served cumulatively or
concurrently with the sentence imposed in an earlier conviction. Tex. Code Crim. Proc. Ann.
art. 42.08 (West Supp. 1993). Appellant argues that article 42.08 does not permit Texas courts
to cumulate sentences with those imposed by federal courts or courts of other states. This
contention was recently found to be without merit after a thorough discussion of the language and
history of the statute. Cook v. State, 824 S.W.2d 634, 643 (Tex. App.--Dallas 1991), pet. ref'd,
828 S.W.2d 11 (Tex. Crim. App. 1992). For the reasons stated in Cook, we hold that the district
court was authorized to cumulate the sentence in this cause with that imposed following
appellant's California conviction. 

 Appellant also argues that article 42.08 does not allow a cumulation order when
the prior conviction is not final at the time of the subsequent conviction. This contention is
without merit. Banks v. State, 503 S.W.2d 582, 587 (Tex. Crim. App. 1974). Point of error six
is overruled.

 The judgment of conviction is affirmed.


 

[Before Chief Justice Carroll, Justices Aboussie and Jones]

Affirmed

Filed: May 5, 1993

[Do Not Publish]
1.   We assume that appellant's reference to evidence "admissible in guilt/innocence" was a
misstatement and was understood by the district court to refer to evidence inadmissible at that
stage of trial.
2.   Appellant's point of error complains of the overruling of his motion in limine. A ruling on
a motion in limine does not preserve error. Cook v. State, 741 S.W.2d 928, 939 (Tex. Crim.
App. 1987). The record reflects, however, that a hearing outside the jury's presence was held,
at which time appellant objected to the officer identifying himself as a homicide detective for the
reasons he now advances on appeal. The objection was overruled. We will consider this point
of error as one directed at the overruling of appellant's objection to the testimony. 
3.   The officer testified that, in the community in which appellant resided in California,
appellant's reputation for being peaceful and law-abiding was bad.
4.   In his concurring opinion in Wright, Judge Roberts observed, "It is almost impossible to
commit reversible error in such a proceeding [a guilty plea before a jury], but this case
demonstrates that nothing is impossible if it is sought zealously enough." 609 S.W.2d at 806.